[Crim. No. 8128. First Dist., Div. Two. June 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLAN H. LUDVIKSEN, Defendant and Appellant.

## COUNSEL

LeRue Grim, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SHOEMAKER, P. J.**—Defendant Allan Ludviksen was tried by a jury and found guilty of first degree burglary. The court suspended the imposition of sentence and placed defendant on supervised probation for a period of one year. Defendant appeals.

Defendant does not challenge the sufficiency of the evidence. The facts will be set forth only insofar as they are relevant to defendant's arguments on appeal.

Defendant's first contention is that the trial court erred in denying his motion to dismiss the action, pursuant to Penal Code, section 1382, subdivision 1, on the ground that the information was not filed within 15 days after defendant was held to answer in the municipal court.

According to the record, defendant was held to answer in the municipal court on July 18, 1968. The district attorney's office was represented by Mr. Anthony, and the court asked him when defendant was scheduled to appear in the superior court. Anthony replied that defendant was directed to appear on July 29. Defendant's counsel then advised the court that he had another trial starting on July 29 and asked that the superior court hearing be continued. He indicated that he had no objection to the superior court hearing being held more than 15 days after defendant was held to answer and stated that the prosecutor could still file the information within the 15-day period. The court then ordered that defendant appear in the superior court on August 5 and stated that the information might be filed on July 29. Defense counsel agreed to the August 5 hearing date.

On August 5, defendant and his counsel appeared in the superior court. The district attorney's office was represented by Mr. Thomas, who filed the information in open court. Defendant then moved to dismiss the action on the ground that the information had been filed 18 days, rather than 15 days, after defendant was held to answer.

On August 26, the motion to dismiss came on for hearing, with Mr. Birkie

appearing on behalf of the district attorney's office. Birkie advised the court that there had been a misunderstanding in his office as to the date on which the information was required to be filed. He explained that following the July 18 hearing in municipal court, he had asked Mr. Anthony when the prosecution was to appear and file the information. Anthony told him August 5, and Birkie marked that date on his calendar. He did not realize that the information was required to be filed in advance of the August 5 hearing date.

The court denied defendant's motion to dismiss the action.

Penal Code, section 1382, provides in pertinent part that "unless good cause to the contrary is shown," the court must order an action to be dismissed (pursuant to subd. 1) when a person has been held to answer for a public offense and an information is not filed against him within 15 days thereafter and (pursuant to subd. 2) when a defendant is not brought to trial in the superior court within 60 days after the filing of the information. Research discloses only one case where the defendant was timely brought to trial but contended that he was nevertheless entitled to have the judgment of conviction reversed for the prosecution's failure to file the information within 15 days after he was held to answer. In that case, *People* v. *Farrington* (1903) 140 Cal. 656 [74 P. 288], the court held that the trial court had properly denied the motion to dismiss because there was evidence that the prosecutor had filed the information one day late as a result of an understandable mistake as to the date on which the defendant had been held to answer.

In the instant case, the record of the August 26 hearing likewise reveals that the late filing of the information was due to an understandable mistake caused by faulty communication between the various members of the district attorney's office who were handling the case at different stages of the proceedings. Since the trial court denied defendant's motion to dismiss the action, it was obviously of the opinion that the prosecution had adequately explained the delay in filing the information.

■ It is well established that what constitutes good cause for the delay of a trial is a matter within the discretion of the trial court and that its determination in the premises, absent a showing of any abuse of that discretion, will not be disturbed on appeal. (*People* v. *McFarland* (1962) 209 Cal. App.2d 772, 776-777 [26 Cal.Rptr. 596].) Further, under California law the right to a speedy trial is not a fundamental right such as the right to counsel, hence an improper delay, even though violative of Penal Code, section 1382, will not justify a reversal of the judgment in the absence of a showing of prejudice resulting from the delay. (*People* v. *Katzman* (1968) 258 Cal.App.2d 777, 789-790 [66 Cal.Rptr. 319].)

██ In the instant case, defendant is not claiming that he was deprived of a speedy trial. Defendant has failed to demonstrate that the prosecutor did not make an adequate showing of good cause for the three-day delay. Moreover, defendant has likewise made no attempt to demonstrate that the delay was prejudicial to him in any way. His own counsel requested that defendant's initial appearance in superior court be continued to August 5. The information was filed in open court on that date, and defendant has failed to suggest any way in which he would have benefited had the information been filed three days earlier.

██ Defendant's final contention is that the trial court ought to have excluded from evidence the testimony of the arresting officer relative to certain oral admissions which defendant made to him. Defendant asserts that the admissions in question were not voluntary but were the product of "delicate coercion" on the part of the arresting officer.

Defendant was arrested at his San Francisco apartment on February 29, 1968, by Officer Midyett of the Belvedere Police Department. Two other suspected participants in the burglary had previously been arrested and had given the police statements implicating defendant. On the afternoon of defendant's arrest, Midyett knocked on the door of defendant's apartment and, when defendant answered the door, identified himself as a police officer and informed defendant that he was placing him under arrest for a particular burglary. Defendant was then fully advised of his *Miranda* rights, and defense counsel stipulated at the trial that defendant understood those rights. Midyett testified that he then asked defendant whether he wished to talk to him and that defendant made no verbal response and remained seated for a moment. Defendant then got up, turned to Midyett and asked the officer what reason he had to believe that defendant had been involved in the burglary. Midyett replied that both arrested persons had stated, verbally and in writing, that defendant was involved in the burglary. Midyett then got up and indicated that it was time to go and that he wanted defendant to come with him. Defendant asked where he was to be taken, and Midyett told him that he was to be taken to the county jail in San Rafael for booking. Defendant asked if he could leave a note for a friend of his, and Midyett told him that he could. As defendant sat down to write the note, he made a statement to the effect that he knew "this day was coming" or that "this was going to happen." He then stood up, walked to the window, turned and told Midyett, "Well, I might as well tell you about it." Midyett then stated, "Well, good. This is the thing to do." He also informed defendant that fingerprints had been lifted from the burglarized premises and from a car and that defendant's fingerprints had been flown from Oregon for comparison. Midyett then

asked defendant what he knew about the burglary, and defendant replied, "Well, I went there with them."

Officer Midyett admitted that when he made the statement to defendant concerning his fingerprints, he knew that defendant's fingerprints had not been found in the burglarized house. He was uncertain as to whether defendant's fingerprints had been found in the car. Midyett admitted making the remark about fingerprints to reaffirm defendant's decision to talk. He did not tell defendant that his fingerprints were not found in the house because Midyett did not feel that it was incumbent upon him to reveal to defendant the precise nature of the evidence possessed by the police.

Defendant testified that he admitted to Midyett that he had been involved in the burglary because he felt that his back was to the wall, since the police had his fingerprints and the statements against him. According to defendant, it was obvious that the police had the necessary evidence to put him in jail, and he figured that he might as well admit that he was implicated in the burglary.

Defendant relies upon two cases in support of his contention that his verbal admission to Midyett was inadmissible because coerced. However, neither case bears any real factual similarity to the case at bar. In *People v. Underwood* (1964) 61 Cal.2d 113 [37 Cal.Rptr. 313, 389 P.2d 937], there was uncontradicted testimony that defendant's statements to the police were made at a time when he had just been physically abused by members of the victim's family, who had hit or kicked him about the head. The evidence also showed that he had repeatedly been awakened by the police during the night and was therefore physically exhausted, and that the police had told him that if he did not tell them exactly what they wanted to hear, a particular officer would personally see that he was escorted to the gas chamber. *People v. Green* (1965) 236 Cal.App.2d 1 [45 Cal.Rptr. 744], the second case relied upon, merely held that certain statements were inadmissible because the defendant had not been adequately advised of his constitutional rights. Coercion was not in issue.

Here, defendant was adequately advised of his constitutional rights and understood them. Defendant's claim of coercion is based solely upon the fact that Midyett told him that the two other men involved in the burglary had given statements implicating him and that a check had been run on his fingerprints. With regard to the statements made by the other suspects, Midyett did not volunteer this information but gave it in response to defendant's inquiry as to why Midyett believed that he had been involved in the burglary. In response to a direct inquiry of this nature, it was obviously not in the least improper for Midyett to inform defendant of the statements

given by the other suspects. Certainly, Midyett's conduct cannot be termed coercive merely because the information which he revealed to defendant may have caused the latter to believe that he was already so deeply implicated in the burglary that he had nothing to lose by discussing it with the officer. With regard to Midyett's subsequent statement concerning the fingerprint comparison, the record does indicate that Midyett voluntarily made this remark in order to encourage defendant to talk to him. However, the record also shows that defendant had already made his decision to talk prior to being advised of the fingerprint evidence and had already informed Midyett that he might as well tell him about his involvement in the burglary. Under these circumstances, defendant's incriminating statement to Midyett was voluntary rather than coerced, the same was admissible and the court's ruling was proper.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.